No. 20,885.

THE DELAWARE STATE BANK, *Appellee,* v. WOODLIEF G. COLTON and THE UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellants.*

SYLLABUS BY THE COURT.

1. INDEMNITY BOND—*Against Fraud of Bank Cashier—Loss—Bond Construed—Proof Required.* A surety bond indemnifying a bank against loss occasioned by the fraud or dishonesty of its cashier "amounting to embezzlement or larceny" is construed as intended to indemnify the bank from loss occasioned by the official's fraud or dishonesty of the general character and nature usually involved therein and in an action on the bond the plaintiff may recover without technical proof of fraudulent acts as required in criminal prosecutions for embezzlement or larceny.

2. SAME—*"Immediate Notice" of Loss Not Given—Waiver.* On the facts stated in the opinion, the failure of the plaintiff to give "immediate notice" of the loss, as provided in the bond, was waived by the conduct of the surety company in placing its denial of liability upon other distinct grounds.

Appeal from Montgomery district court; THOMAS J. FLAN-
NELLY, judge. Opinion filed February 9, 1918. Affirmed.

*S. H. Piper,* of Independence, for the appellants.

*T. H. Stanford,* and *G. T. Stanford,* both of Independence,
for the appellee.

The opinion of the court was delivered by

PORTER, J.: The bank brought this action on a bond given
by Colton, its former cashier, and the guaranty company as
surety, to recover for loss sustained by reason of the fraud
and dishonesty of Colton. The trial was by the court, result-
ing in findings that Colton had appropriated to his own use
certain rents from property belonging to the bank, and had
taken from its securities a note signed by his mother for $800,
by which the bank sustained loss; and that his acts were of
such a fraudulent and dishonest nature as amounted to em-
bezzlement. The bank was given judgment for the loss sus-
tained in these transactions, and defendants appeal.

By the terms of the bond the surety company agreed to re-
imburse the bank for all pecuniary loss sustained by reason of
the fraud or dishonesty of Colton in connection with the duties
of his office "amounting to embezzlement or larceny," and the
main contention urged is, that the demurrers to the petition
should have been sustained on the ground that the petition
failed to allege that the cashier's acts amounted to embezzle-
ment or larceny. The bank's location was in Oklahoma, and
it is urged that the petition should have pleaded the laws of
that state defining these offenses.

It was not necessary that the petition should allege, or that
the proof should establish, facts sufficient to constitute the
crime of embezzlement or larceny. The purpose of the bond
was to indemnify the bank against pecuniary loss occasioned
through the fraud or dishonesty of Colton in connection with
his duties as cashier, and the words "amounting to embezzle-
ment or larceny" cannot be given the effect contended for.
They do not so far qualify the words "fraud and dishonesty"
as to relieve the surety company from liability until the bank
produced testimony which would have been sufficient in a
criminal case to convict Colton of one of these crimes. Bonds

Bank v. Colton.

of this character are to be construed most strongly against the surety company. It is not in the position of a private surety, who is favored by the law and permitted to rely upon technical defenses. (*Hull v. Bonding Co.*, 86 Kan. 342, 120 Pac. 544; *Lumber Co. v. Douglas*, 89 Kan. 308, 321, 131 Pac. 563; *School District v. McCurley*, 92 Kan. 53, 142 Pac. 1077, and cases cited.) The surety company prepares the bonds on its own forms, and the courts as a general rule construe them as intended to protect the obligee from loss occasioned by the dishonest and fradulent acts of the principal, wholly regardless of whether or not the principal might upon the facts established have been convicted of embezzlement or larceny. In *Champion Ice Mfg. & Cold Storage Co. v. Amer. Bond. & Trust Co.*, 115 Ky. 863, a case arising on a bond worded substantially as the bond in the present case, the same defense was urged. It was said in the opinion:

"Such a narrow construction of the provisions of the contract is not required by the law, and was never contemplated by the parties to it. While larceny is a common-law crime, yet in this state the punishment therefor is statutory. Embezzlement is purely a statutory crime, but the terms 'larceny' and 'embezzlement,' in the bond or policy sued on, are used as generic terms to indicate the dishonest and fraudulent breach of any duty or obligation upon the part of an employe to pay over to his employer, or account to him for, any money, securities or other personal property, the title to which is in the employer, that may in any manner come into the possession of the employe. It will be observed that the bond in this case is a printed one—prepared, doubtless, by a skilled attorney in appellee's employ. The contract expressed therein is but a form of insurance, and the law of insurance is that, in the construction of policies, if there be any ambiguity in them, it must be construed most strongly against the insurance company." (p. 872.)

To the same effect is *City Trust, etc., Co. v. Lee*, 204 Ill. 69. In Frost's Law of Guaranty Insurance, 2d ed., the author says:

"To summarize briefly what has preceded, it may be asserted with confidence that the term 'embezzlement,' as used in fidelity insurance, does not call for the same technical proof of fraudulent acts on the part of the 'risk' amounting to the crime of embezzlement as would be required were the latter being prosecuted under the statute for the commission of such crime." (p. 117, § 43.)

In *McIntyre v. Surety Co.*, 97 Kan. 629, 156 Pac. 690, the conditions of the bond were somewhat broader than in the case at bar. The surety company agreed to pay the shortage of the

bonded party if his liability "is caused by robbery, fraud, defalcation, breach of trust or other intentional offense against the property of his employer, or which the latter may have entrusted to him, either as agent, employee or attorney." (Syl. ¶ 1.) It was held that recovery could be had upon proof that the default of the bonded party was caused by fraud or by a breach of trust, and that it was not necessary to show that he had embezzled the money or property entrusted to him.

The plaintiff introduced in evidence the statutes of Oklahoma defining the offenses of embezzlement and larceny, but this was unnecessary. It furnished no assistance to the trial court in determining whether or not the cashier's conduct constituted a breach of the bond. Since the trial was by the court, the defendants could not have been prejudiced by the evidence. Without regard to the statutory definition of these offenses, the facts established by the evidence justified the conclusion of law that the cashier's conduct amounted to embezzlement within the meaning of that term as used in the bond. To hold otherwise would defeat the purpose for which the bond was given and the premiums accepted by the surety company. We think the term "embezzlement" as used in the bond has a generic, and not a specific, meaning. The purpose was to indemnify the bank from loss occasioned by the official's fraud or dishonesty of the general character and nature usually involved in embezzlement or larceny. This accords with our previous decisions in the cases we have cited, holding such contracts mere forms of insurance, and, applying to them the law of insurance, construing all ambiguities in their terms most strongly against the insurer.

Colton testified that in a conversation with Mr. Guernsey, one of the officers of the bank, he was authorized to withdraw the note, charge it off, and return it to the maker, and it is urged that the findings in respect to this transaction are contrary to the evidence; that while Colton may have been mistaken as to the extent of his authority, he acted under a claim of right and was not, therefore, guilty of any fraud or dishonesty. He was a defendant and his declaration must be regarded as self-serving; besides, Mr. Guernsey was a witness and denied that any such conversation took place. Manifestly, the court believed Mr. Guernsey's testimony.

Bank v. Staab.

It is contended that plaintiff cannot recover because of its failure to give "immediate notice" of the loss, as provided in the bond. The loss was discovered on the 15th of May. On the 21st of July the company was notified, and the court finds that the bank gave notice as soon as practicable. The findings are to the effect that the surety company made no complaint that it was not promptly notified. It responded to the notice and caused the books of the bank to be examined, and made inquiries of the defendant Colton. There is no showing that it was prejudiced in any way by the failure to give notice earlier. Moreover, the court finds that after the surety company had made its investigation it advised the plaintiff that inasmuch as Colton denied liability the surety company would not admit that it was liable. Having placed its denial of liability upon one distinct ground, with no complaint in respect to notice, it was too late after being sued for it to mend its hold and rely as a defense upon the failure to comply strictly with the condition respecting notice.

The judgment is affirmed.