No. 45,961

In the Matter of the Estate of Ellen C. Showers, Deceased. KENNETH W. SHOWERS and RALPH C. BETHELL, *Appellants*, v. JOHN O. SHOWERS, et al., *Appellees*.

(485 P. 2d 299)

Opinion filed May 15, 1971.

*Allan Shelton*, of Hill City, argued the cause, and *Kenneth Clark*, also of Hill City, and Stowell & Stowell, of Phillipsburg, were with him on the brief for the appellants.

*Marion W. Chipman*, of Olathe, and *Lowell F. Hahn*, of Phillipsburg, argued the cause, and *Wallace C. Sullivan*, and *Stephen S. Sage*, both of Phillipsburg, were with them on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This action is one to construe the will of Ellen C. Showers. It was commenced by her son, Kenneth W. Showers, by the filing of a petition in probate court. The cause was transferred to district court pursuant to 59-2402a, where judgment was entered against Kenneth. This appeal followed. In this opinion we shall sometimes refer to Mrs. Showers as Ellen and to Kenneth W. Showers as Kenneth, or plaintiff.

The facts are somewhat complicated. We shall attempt to state them as simply as possible. Mrs. Showers had three children: John, who was named as executor of her estate; Mildred, who sides with John in the present controversy; and Kenneth, who initiated these proceedings.

Ellen died March 4, 1967. In her will she bequeathed certain items of personal property to each of her three children and devised the oil and mineral interests in her farm property one-fourth each to John, Mildred and Kenneth and the other fourth equally to a church and to a college, which she named. She then directed her executor, John, to sell the remainder of her estate upon such terms and in such manner as he should deem best and without court approval, for not less than three-fourths its appraised value. The proceeds from the sale, which Ellen referred to as the residue of the estate, was to be divided into three equal parts, A, B and C, which she bequeathed as follows: Part A to Mildred, part B to John and the balance remaining in part C, after certain allowances had been made to John and Mildred under a formula which is not too clear, was bequeathed to John in trust for the use and benefit of Kenneth's children. We are not concerned here with either the formula set out in part C or with the terms and provisions of the trust.

Proceeding under the provisions of Ellen's will, John sold a certain half section of land at public auction, subject to the oil, gas and mineral rights, to Ralph C. Bethell for the sum of twenty-six thousand, four hundred dollars ($26,400), which exceeded the appraised value, as we understand it. A contract of sale was executed wherein it was agreed that $6,600 was to be paid in cash, and held in escrow by a Mr. Legere, the realtor who made the sale, and the balance was to be due on approval of title by Clayton Flood, an attorney from Hays.

In due time the Flood law firm, by Steven P. Flood, rendered

an opinion expressing some doubt as to whether title was merchantable because of our decision in *Blake-Curtis v. Blake,* 149 Kan. 512, 89 P. 2d 15, where we discussed the rule against perpetuities. A construction of Ellen's will was required by Mr. Flood. The opinion was dated May 2, 1969.

Three days prior to May 2d, Kenneth filed the present action in probate court to construe his mother's will, contending it was void as violating the rule against perpetuities.

After the petition was filed, considerable activity ensued. Ralph Bethell, who had purchased the land, was made a party defendant, as was Don Legere, the broker who conducted the sale and who held the $6,600 in escrow. Various answers, cross petitions, counterclaims and cross claims were filed by and against John, Mildred, Bethell, Legere and Lowell F. Hahn, guardian *ad litem* for Kenneth's minor children.

Eventually, and after the pleading phase was over, the court entered summary judgment denying Kenneth's petition and taxing the costs against him, including a guardian *ad litem's* fee. As has been said, Kenneth has appealed. Ralph Bethell has joined in the appeal, although he does not contend the will is invalid. Bethell also furnished $30,000 supersedeas bond ordered by the trial court.

Bethell complains the trial court erred in ordering him to pay the contract balance of $19,800, and in requiring Legere, the real estate broker, to relinquish the $6,600 down payment before there had been a final determination as to merchantable title. He contends that the finding of the district court was not a final determination because its judgment was being appealed.

We believe the judgment entered against Bethell was well within the issues framed by the pleadings. Both Bethell and Legere were made additional parties defendant without objection on their part. Bethell had previously taken possession of the farm, and the executor of Ellen's estate sought to recover the contract price. In a responsive pleading, Mr. Bethell asked that if the will be held invalid the $6,600 he had paid Legere on the contract price be returned to him, and that he be compensated for improvements placed on the farm.

The court thus had jurisdiction over the parties and over questions with respect to the sale contract. It was entitled to grant full relief relating to the subject matter being litigated. (*Marland Refining Co. v. Cheatum,* 125 Kan. 457, 264 Pac. 738.)

Mr. Bethell's other displeasure flows from apprehension that under the provisions of K. S. A. 1970 Supp. 16-204 the judgment may bear 8% interest. This is a matter regulated by statute and can hardly be said to affect the court's jurisdiction to enter the judgment. We may also add that no great inequity would seem to result from the payment of interest in view of Bethell's having been given possession.

At the outset, we are met by a motion filed by John Showers, Mildred Thomas and Lowell Hahn to dismiss the appeal. The motion alleges a number of procedural derelictions on the part of the appellants which will neither be detailed nor ruled on in view of our ultimate disposition of this appeal. We are entitled to observe, however, that whenever an attorney undertakes to represent an appellant in appealing to this court he should be diligent in following the appellate rules of procedure last published in 205 Kansas at pp. xxiii, *et seq.,* else he may find an otherwise meritorious appeal thrown out of court.

Kenneth, in challenging the lower court's judgment, complains that the trial court erred in two particulars: (1) In holding that Ellen's will did not violate the rule against perpetuities and (2) in the assessment of costs against him. We shall examine the complaints separately.

Basically, Kenneth's argument with respect to his first point is that the bequests contained in the sixth article of his mother's will, denominated parts A, B and C, are conditioned on a contingency which may never occur. He calls attention to the provision directing the executor to sell the residue and remainder of Ellen's estate, after minor bequests have been satisfied, and excepting oil and mineral interests in the farm, at not less than three-fourths the appraised value. Kenneth argues that this is an uncertain contingency which may never occur for two reasons: First, the executor may never find it possible to sell the property for three-fourths its appraised value and second, it may never be possible to sell the property at any price.

In support of his position, Kenneth relies on *Blake-Curtis v. Blake,* supra. In that case the testator directed that his executor take immediate charge and control of his Grant County ranch in its entirety, and manage the same to the best advantage of his heirs; to make new loans if necessary to pay off existing loans; and not to sell the same until he could receive not less than $20 per acre, or

the aggregate sum of $40,000, to be used as directed, *i. e.,* to be divided among certain of his children in varying proportions.

An action was filed to construe the will, it being contended that the provision forbidding sale of the ranch for less than $20 per acre was void as violating the rule against perpetuities. This claim was grounded on the premise that it might never be possible to sell the ranch for as much as $20 per acre, and evidence was in fact produced that it had not yet been possible to secure a buyer at such a price.

The trial court held, in *Blake,* that the provision limiting the sale to not less than $20 per acre was void as violating the rule against perpetuities, perhaps being somewhat influenced by the agreement of all the litigants that the provision was indeed void. On appeal, this court agreed the restriction was invalid. However, this court went on to hold that the invalid restriction could be excised from. the will's provisions, thus enabling the executor to carry out the testator's obvious intention that the ranch be sold and the proceeds paid in the manner directed.

In discussing *Blake,* the defendants call attention to the fact that *all parties in that case agreed* that the restrictive provision was void because it violated the rule against perpetuities. We presume they would have us infer that the *Blake* case thus provides no binding precedent for Kenneth's contention that the limiting provision in Ellen's will is void within the rule.

We are not inclined to discuss the basis on which the court, in *Blake,* made its determination that the limiting provision in the will infringed the rule against perpetuities. The fact remains, such was the decsion. But, as we have already said, the court, after striking down the offending limitation, went on to hold that the void provision might be stricken or disregarded in order that Blake's testamentary intention might be carried out. This, we believe, is the crucial point in that decision so far as the present case is concerned.

After citing a number of anthorities in support of its position, the court said this in *Blake:*

"Running through all these cases is the holding that the thing to be preserved is the testamentary scheme or plan of the testator. If taking out the void clause destroys this plan, then the entire will must fail. If the void clause can be taken out and the testamentary plan followed then that should be done. We are confronted with a situation where the provision fixing the price at which the land may be sold may be disregarded, and still the testamentary plan carried out both as to the execution of the trust for one of the

daughters and as to the payment of the proceeds of the sale to the other beneficiaries. 'To follow the contention of the defendants would destroy the entire plan of the testator and result in intestacy. . . ." (p. 527.)

The principle finds strong support in our case law. See *In re Estate of Foster,* 190 Kan. 498, 376 P. 2d 784, 98 A. L. R. 2d 795, and authorities cited therein. In the subsequent case of *In re Estate of Freeman,* 195 Kan. 190, 404 P. 2d 222, *Foster* was cited with approval and we held:

"Under the facts as disclosed in the opinion, where some of the provisions of a devise in a will are invalid because they violate the rule against perpetuities and the testamentary scheme can be determined and carried out, at least in part, under the valid provisions, the void provisions will be stricken and the valid provisions given effect. (Syl. ¶ 6.)

The testamentary plan in this case appears clear and unambiguous. Except for (1) a few small legacies to her three children and (2) oil and gas interests in her farm, Ellen Showers wanted her property sold and the proceeds distributed in equal shares to John, to Mildred and to John as trustee for Kenneth's children. Thus, from her property, she sought to make provision for the needs of two of her own children and the children of Kenneth.

We believe this testamentary scheme can be implemented despite the limiting provision that sale of the property should not be for less than three-fourths its appraised value. In *Blake,* the court concluded that the administratrix c. t. a. would have "the power and authority to sell the ranch to the best advantage of all the beneficiaries and to pay out the proceeds in accordance with the directions of the will." Like authority in this case should be reposed in Ellen's executor.

The contention advanced by plaintiff that it may never be possible to sell the land at any price gives us no pause. We believe it axiomatic that in our society farm land has value. K. S. A. 60-409 provides that judicial notice may be taken of such specific facts and propositions of generalized knowledge as are so universally known that they cannot be the subject of debate. Under this statute the court will judicially recognize that a Kansas farm is a valuable possession.

It is quite true that Ellen's will contains no time limitation for selling her property, but this omission will not vitiate the sale provision. In 70 C. J. S., Perpetuities, § 25, p. 607, the rule is expressed:

"A power to sell property in order that the proceeds thereof may be used

for the payment of debts or legacies is ordinarily not objectionable to the rule against perpetuities, both because it must be exercised within a reasonable time, and because the creditors or legatees have a present interest in the property or its proceeds, of the nature of a charge, and so may compel the donee of the owner to exercise it at once."

In *Eary v. Raines,* 73 W. Va. 513, 80 S. E. 806, it was held that the power given an executor to sell must be exercised within a reasonable time and thus is not void for remoteness. The Colorado court came to a similar conclusion in *Miller v. Weston,* 67 Colo. 534, 189 Pac. 610, wherein it was determined that a will which directed the sale of property and the payment of legacies as soon as reasonably practical after the testator's demise, did not violate the rule against perpetuities.

The same principle has been said by this court to apply with respect to the exercise of a testamentary option to purchase. In the case of *In re Estate of Maguire,* 204 Kan. 686, 466 P. 2d 358, we held that where no time limit is set by the testator for the exercise of an option contained in his will, the same must be exercised within a reasonable time and, as thus construed, it does not violate the rule against perpetuities.

We conclude that the will of Ellen C. Showers does not violate the rule against perpetuities.

Two ancillary points remain for consideration. The trial court assessed costs of the action, including a $400 guardian *ad litem's* fee against Kenneth. He complains of this action on two grounds.

First he contends the court had no authority to allow a fee to the guardian *ad litem.* The argument goes like this: (1) In the early cases of *Prest v. Black,* 63 Kan. 682, 66 Pac. 1017 and *Warner v. Warner,* 83 Kan. 548, 112 Pac. 97, this court held in substance that guardian *ad litem* fees were not costs, strictly speaking, and hence were not chargeable against an unsuccessful litigant in the absence of statutory authority; (2) that in 1911 the legislature enacted a law, which eventually evolved into G. S. 1949 60-408, providing for the appointment of a guardian *ad litem* to represent minors and other incompetent persons, and who should receive such reasonable compensation as the court might order, to be taxed and collected as costs; (3) this statute was repealed in 1963 by enactment of the new Code of Civil Procedure; (4) that present statutes make no provision for allowance of compensation to a guardian *ad litem* or for taxing his fee as costs.

K. S. A. 1970 Supp. 60-217(c) provides in part:

". . . The court shall appoint a guardian *ad litem* for a minor or incapacitated person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the minor or incapacitated person."

The appellees insist that the allowance of guardian *ad litem* fees, and their taxation as costs, come within the intendment of "such other order" as the court "deems proper for the protection of the minor or incapacitated person." We express no view as to whether this is a proper construction of the statute, since the allowance of a fee to the guardian *ad litem* in the present case appears to be authorized under a section of the Probate Code, K. S. A. 59-1717, which provides:

"Every fiduciary shall be allowed his necessary expenses incurred in the execution of his trust, and shall have such compensation for his services and those of his attorneys as shall be just and reasonable. At any time during administration the fiduciary may apply to the court for an allowance upon his compensation and upon attorneys' fees."

We entertain no doubt that a guardian *ad litem* is a fiduciary within the meaning of this statute. Neither do we question the authority of the district court, hearing this matter on a transfer from probate court under K. S. A. 59-2402a and 2402b, to utilize the provisions of 59-1717 in making an allowance to the guardian *ad litem* in the present proceeding. In the recent case of *In re Estate of Roberts*, 192 Kan. 91, 386 P. 2d 301, we held the district court was authorized to make an allowance for attorney's fees under K. S. A. 59-1504. By analogy, we believe the district court, hearing a matter on appeal from or transferred from probate court, has similar right to allow guardian *ad litem* fees under K. S. A. 59-1717.

In our opinion there is merit in plaintiff's final contention, *i. e.*, that the costs incurred in district court should be taxed against the estate. K. S. A. 1970 Supp. 59-2214 provides in part that in all probate proceedings relating to a decedent, the court shall tax costs against the estate unless otherwise provided or unless it appears it would be unjust or inequitable to do so. Under the circumstances of this case we believe no injustice would be done by taxing the costs incurred in the trial court against the Showers estate.

Although it is true that Kenneth commenced this lawsuit a few days before the title opinion was rendered by Mr. Flood, a construction of the will was required as a prerequisite to Flood's ap-

proval of title. Thus a lawsuit was inevitable. Either the present lawsuit—or one identical to it—would be essential to perfect the title. A controversy existed as to a matter of law which was holding up a sale—and a lawsuit was required to resolve it. Under these circumstances it must be conceded that the estate received a benefit from these proceedings which determined the disputed question and removed the doubt which had existed. We deem it fair that costs in the court below be assessed to the estate.

In a comparatively recent case, *In re Estate of Sowder*, 185 Kan. 74, 340 P. 2d 907, this court directed the district court to make a proper allowance to the defeated litigant in a will construction case with which to pay the attorneys' fees of his counsel, and to assess them against the funds of the estate. The same principle would seem applicable here, and for the same reason, *i. e.*, that an estate is benefitted by having a disputed question of law decided where there is reasonable doubt as to the proper construction of the will.

We are unable to say, however, that this appeal confers a similar benefit upon the Showers estate. Judgment was entered in district court upholding the will. That judgment would have become final and binding had this appeal not followed. (*Wycoff v. Quick Way Homes, Inc.*, 201 Kan. 442, 441 P. 2d 886.) This would have been so even though the construction placed on the will was erroneous. (*Bindley v. Mitchell*, 170 Kan. 653, 228 P. 2d 689.) Since the estate recovered a favorable judgment in the trial court, no benefits would have accrued to it by reason of this appeal. Accordingly, the costs of this appeal will be taxed to appellants.

The judgment is affirmed with directions to assess the costs incurred in the court below against the estate of Ellen C. Showers.

FATZER, J., concurring: Under the compulsion of *In re Estate of Freeman*, 195 Kan. 190, 404 P. 2d 222, I join the opinion and judgment of the court sustaining the will of Ellen C. Showers, and assessing the costs incurred in the court below against the testatrix estate.