No. 56,405

In The Matter of The Estate of Owen R. Robinson, Deceased

Sally L. Robinson, *Appellant*, v. R. Michael Jennings and Anne Irving, *Appellees*.

(690 P.2d 1383)

Opinion filed December 3, 1984.

*Norbert R. Dreiling*, of Dreiling, Bieker & Kelley, of Hays, argued the cause, and *Karl W. Friedel*, of Cooper & Friedel, of Wichita, was with him on the brief for appellant.

*Robert L. Howard*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Susan L. Smith*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

Lockett, J.: This is an appeal of a trial court's allowance of attorney fees following remand from this court.

This is the fourth appeal of matters concerning the estate of Owen R. Robinson and the second appeal concerning the awarding of attorney fees under K.S.A. 59-1504. The facts as stated in *In re Estate of Robinson*, 232 Kan. 752, 659 P.2d 172 (1983) (*Robinson III*), are applicable as background for this appeal.

On September 2, 1965, after 35 years of marriage, Owen and Sally Robinson were divorced. The following day Owen executed a will leaving all of his property to his nephew and niece, R. Michael Jennings and Anne Jennings Irving (hereinafter

collectively referred to as "Jennings-Irving"). Approximately one year later Owen and Sally Robinson remarried. On August 16, 1976, Owen suffered a severe stroke. On September 22, 1976, Owen executed a new will leaving all of his property to his wife, Sally. Owen died on June 26, 1978.

Sally sought to have the 1976 will admitted to probate. Jennings-Irving challenged the will. The trial court found that Owen had testamentary capacity at the time of the execution of the 1976 will but concluded that the will was invalid for violation of K.S.A. 59-605 relative to wills prepared by principal beneficiaries. Sally appealed. May 8, 1982, we reversed the judgment, remanding the case to the trial court with directions to admit the 1976 will. *In re Estate of Robinson,* 231 Kan. 300, 644 P.2d 420 (1982) (*Robinson I*).

After its rejection of the 1976 will, but prior to our order to admit the 1976 will, the trial court held an evidentiary hearing as to the validity of the 1965 will and ultimately admitted the will to probate. Sally appealed from the admission of the 1965 will. May 8, 1982, this court in an unpublished opinion reversed the trial court. *In re Estate of Robinson,* No. 53,230 (*Robinson II*).

On January 25, 1982, while the appeals were pending, the trial court held a hearing on the Jennings-Irving petition for allowance of attorney fees for services rendered in district court case No. 78-P-188 (1965 will) and district court case No. 78-P-119 (1976 will). The petition sought allowance solely for Jennings-Irving's promotion of and opposition to the respective wills. No claim was made for any services to the fiduciary administering the estate. Attorney fees and expenses were allowed Jennings-Irving as follows: (1) $42,800.00 attorney fees to the law firm Foulston, Siefkin, Powers & Eberhardt; (2) $3,506.92 expenses to the same firm, and (3) $17,500.00 attorney fees to the law firm Bond, Bond & Coash. The trial court ordered said fees and expenses in single sums without apportionment between the two cases.

When reviewing the award of Jennings-Irving attorney fees in *Robinson III,* this court held that the trial court erred in preventing attorneys for Sally Robinson from examining a computerized time sheet breaking down the time and expenses of the Foulston firm; that no attorney fees were to be allowed to Jennings-Irving for attorney services rendered in opposing the

1976 will (*Robinson I*); and that the attorney fees and expenses incurred in the Jennings-Irving unsuccessful opposition to the 1976 will (*Robinson II*) could not be linked to the attorney fees and expenses incurred in promoting admission of the 1965 will. We reversed and remanded with directions to hold a new hearing on the Jennings-Irving petition for allowance of attorney fees and expenses wherein:

(1) all documentary evidence upon which said allowance request is based shall be a part of the record and made available to opposing counsel;

(2) the basis on which attorney fees are allowed be made a part of the record in sufficient detail as would permit meaningful appellate review if necessary; and

(3) allowance may be made for those reasonable fees and expenses directly incurred by Jennings-Irving as proponents of the 1965 will but excluding any services attributable to the opposition of the 1976 will. The burden of proof is, of course, on Jennings-Irving. (*Robinson III*)

On June 22, 1983, a new evidentiary hearing, as directed in *Robinson III*, was held before the judge who had presided at all of the prior probate proceedings. At the hearing, petitioners entered into evidence six exhibits which included computerized time records for legal services and expenses of Jennings-Irving's counsel and other time, service and expense records. These exhibits were a computation of the total time involved in all estate proceedings, not just those relating to the efforts associated with the 1965 will. No documentary evidence was introduced which showed separately and specifically the attorneys' time and expenses in relation to the probate of the 1965 will.

Phil Frick, a member of the Foulston firm, testified that exhibits 1 and 2 were a compilation of his firm's time records from 1978 up until the hearing, and that they were billing memos, not statements to the clients. Robert Bond, an El Dorado attorney who was associated with the Foulston firm to assist in the case, identified exhibit 4 as a partial time record of his work on the case. Exhibit 4 was prepared by Bond in the month prior to the hearing based on other records in his office. While Bond rounded off the total hours on exhibit 4 to 150, he testified that he probably spent 200 to 225 hours on the case. These hours were

for all services rendered, and not limited to the 1965 will work.

Richard C. Hite, who qualified as an expert on the value of the services of an attorney, gave opinion evidence for the petitioners based on his review of exhibits 1, 2, 4 and 6 and petitioners' files of the case as to the value of the legal services rendered by counsel for petitioners. Hite concluded that a $100.00 per hour rate overall would be a fair and reasonable fee; that the Foulston firm spent 954 hours on the case; and that Bond spent 200 hours on the case. Hite believed it was impossible to separate out the time for the 1965 will trial, and would allocate two-thirds of the total fee or $76,900.00 as a proper amount for work on the 1965 will case.

During the proceedings respondent's counsel attempted to place into evidence the fee agreement between Jennings-Irving and their attorneys. Mr. Frick, Mr. Bond and Mr. Hite were all asked on cross-examination if they had knowledge of the fee arrangement between Jennings-Irving and the Foulston firm. Each witness stated he had no knowledge as to whether the employment contract was based on a contingent fee, on an hourly rate, or on a mixture of the two. Respondent's counsel called Mr. Jennings as a witness to determine the nature of the fee arrangement with the attorneys. Petitioners' counsel objected claiming the information was privileged and irrelevant. The objection was sustained.

In a memorandum opinion filed October 31, 1983, the trial court entered an allowance of attorney fees in the amount of $43,780.00 and expenses in the amount of $646.22. Respondent appeals the trial court's decision.

It is a well-established rule that attorney fees and expenses may not be allowed against the estate of a decedent unless authorized by statute. *Reznik v. McKee, Trustee,* 216 Kan. 659, 534 P.2d 243 (1975).

K.S.A. 59-1504 is the applicable statute and states in part:

"Whenever any person named in a will or codicil defends it, or prosecutes any proceedings in good faith and with just cause, for the purpose of having it admitted to probate, whether successful or not, or if any person successfully opposes the probate of any will or codicil, such person shall be allowed out of the estate his or her necessary expenses and disbursements in such proceedings, together with such compensation for such person's services and those of his or her attorneys as shall be just and proper."

The statute provides for two classes of persons to whom fees

and expenses are allowed in will contests. First, those who prosecute "in good faith and with just cause" a proceeding to admit a will, whether successful or not; and second, those who successfully oppose a will. Since Jennings-Irving did not successfully oppose the admission of the 1976 will they were denied attorney fees for those services by this court. In recognition that an estate is benefited when real controversies as to the validity or construction of a will are litigated, the statute provides for attorney fees to be paid out of the estate to a successful or unsuccessful litigant. Jennings-Irving were allowed attorney fees for their unsuccessful, good faith effort to have the 1965 will admitted to probate. This allowance is authorized upon the belief that it is a benefit to the estate as an entity to have the question determined where there is doubt as to the admission or construction to be placed upon the will. The case was remanded for the trial court to determine the necessary expenses of services of the proponents and those of their attorneys which were just and proper.

Respondent argues any award of attorney fees under K.S.A. 59-1504 are to the litigant and must therefore be based on attorney fees for which the litigants are personally liable; where there is a contingency fee arrangement, unsuccessful litigants have incurred no liability, and the court cannot, therefore, award attorney fees.

There are no Kansas cases construing to whom attorney fees are payable under K.S.A. 59-1504. Respondent argues that K.S.A. 59-1504 and K.S.A. 59-1717 have similar language and that cases construing 59-1717 have held that reimbursements for attorney fees are payable to the fiduciary under 59-1717 so that he can pay his attorney. K.S.A. 59-1717 states in part:

"Every fiduciary shall be allowed his or her necessary expenses incurred in the execution of his or her trust, and shall have such compensation for services and those of his or her attorneys as shall be just and reasonable."

Statutory provisions for the recovery of attorney fees are compensatory and not penal and, thus, ordinary rules of statutory construction are applied. *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 703, 366 P.2d 219 (1961). Therefore, the ordinary rules of statutory construction are to be applicable to both statutes.

K.S.A. 59-1717 was discussed by this court in *In re Estate of Bertrand*, 188 Kan. 531, 363 P.2d 412 (1961). The court stated:

"The provisions of 59-1717, *supra*, should be so construed that the fiduciary may safely procure the aid of legal advisers, and thus bind the estate for the payment of what may be found reasonable. The law contemplates that the representative *will himself* PAY *the value of such services,* and be reimbursed by receiving credit for the amount paid in settlement of his account. (2 Bartlett, Kansas Probate Law and Practice, § 1001, pp. 506 and 507.)

. . . .

"[I]n most jurisdictions . . . an attorney must look for compensation to the personal representative who employed him, in his individual and not in his representative capacity; and for his services the executor is personally responsible." 188 Kan. at 542.

In *In re Estate of Sowder*, 185 Kan. 74, 340 P.2d 907 (1959), we held where there is no ambiguity in the provisions of a will but a real controversy exists as to the construction of such will on a doubtful question of law, the trial court should allow reasonable attorney fees out of the estate to the defeated as well as the successful party. In dicta, the court found the appellant was entitled to an allowance to pay the fees of his counsel.

This view was restated in *In re Estate of Showers*, 207 Kan. 268, 485 P.2d 299 (1971). That case involved construction of a will, and we determined that costs should be assessed to the estate and the defeated litigant allowed a proper allowance to pay the attorney fees of his counsel.

In all three cases, the award of attorney fees was made not to the attorneys but to the litigant who was personally liable to the attorneys. This is also the view in other states when the courts award attorney fees. See *In re Katz' Estate*, 40 N.J. Super. 103, 122 A.2d 185 (1956); *Carmichael v. Iowa State Highway Commission*, 219 N.W.2d 658 (Iowa 1974).

K.S.A. 59-1504 says that when "any person named in a will or codicil defends it, or prosecutes any proceedings in good faith . . . or if any person successfully opposes the probate of any will . . . such person shall be allowed out of the estate his or her necessary expenses." The statute does not say that attorney fees shall be paid directly to the attorney. It says that the fees shall be paid to "such person" who defends, prosecutes or opposes. The general rule as to statutory construction is that words in common usage are to be given their natural and ordinary meaning in arriving at the proper construction of the statute. *Szoboszlay v. Glessner*, 233 Kan. 475, 664 P.2d 1327

(1983). The respondent is correct. Under K.S.A. 59-1504, "such person" to be allowed necessary attorney fees obviously means the person (Jennings-Irving) who defends or opposes is awarded the attorney fee, not his attorney. The attorney's rights are derivative of his client's rights. Only if the client has a claim to make or right to defend does the attorney become involved, and it is to his client that the attorney must look for reimbursement.

The Supreme Court mandate in *Robinson III* said that an allowance should be made for the "reasonable fees and expenses directly incurred by Jennings-Irving." Incur, as defined in Black's Law Dictionary 691 (5th ed. rev. 1979), means "[t]to have liabilities cast upon one by act or operation of law . . . to become liable or subject to."

Respondent claims if the attorneys for petitioners accepted the case on a contingency fee basis, then the attorneys could not collect their fee unless the judgment was in their favor. The petitioners would not become liable to the attorneys unless they had won. The happening of the contingency is a condition precedent to the right of an attorney to recover for his services and the precise event which was contemplated must happen before the attorney's right accrues. *Cain v. Tuten,* 82 Ga. App. 102, 60 S.E.2d 485 (1950). Respondent claims the district court erred when it refused to allow the respondent's attorney to question Jennings as to the fee contract with his attorneys.

Petitioners argue, however, that K.S.A. 59-1504 requires payment of such fees. Paying the fees promotes the public policy behind the statute, because it allows real controversies as to the validity or construction of a will to be litigated. Evidence of the fee arrangement is necessary only to establish there was an attorney-client relationship. The trial court in *Robinson III* determined that there was an attorney-client contract between Jennings-Irving and the Foulston firm; therefore, no further evidence of the contract's obligations was relevant to the issue of the amount of fees to be awarded.

Petitioners, relying on *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, and *City of Wichita v. Chapman,* 214 Kan. 575, 521 P.2d 589 (1974), argue that a contingency fee arrangement is irrelevant in determining an award of attorney fees, particularly where a statute mandates payment of attorney fees.

*Wolf* was an action for recovery of monthly benefits alleged to be payable under certain health and accident policies issued by the defendant companies. After commencement of the action, defendants paid the plaintiff all accrued monthly payments, and the plaintiff stipulated that such payment was in full settlement and agreed to dismiss the actions with prejudice. The issue of whether the defendants were liable for attorney fees under G.S. 1949, 40-256 (1959 Supp.) was reserved for determination by the court. G.S. 1949, 40-256 (1959 Supp.) provided that, where a judgment is rendered against an insurance company which has refused without just cause or excuse to pay the full amount of a loss, attorney fees shall be awarded to the plaintiff. This court said:

"The personal reasons why one insured may enter into a contingent fee contract should not lead a court into making an award of attorneys' fees by taking such contract into consideration. It would be erroneous, therefore, for the trial court to consider the contingent fee contract for any reason other than to establish the employment of counsel and the purpose for which counsel were employed." 188 Kan. at 714.

The same situation is present in *City of Wichita v. Chapman*, 214 Kan. 575. The award of attorney fees, pursuant to K.S.A. 26-509, was made dependent by the statute upon the successful determination of the action. The issue in the case was whether the contingency fee arrangement was improperly considered in establishing the amount of attorney fees under 26-509. We said the situation under 26-509 was different from that in *Wolf*:

"Under 26-509, *supra*, the court may allow as court costs an amount to be paid to the landowner's attorney as attorney fees. Such an amount is designed to be over and above the jury's verdict in the condemnation proceeding. But the allowance is by the statute itself made dependent upon the successful determination of the action—the rendering of a verdict by the jury in an amount greater than the appraisers' award. Thus, the contingency of success inheres in the authorization for an allowance of an amount for attorney fees under 26-509, *supra*." 214 Kan. at 587.

We concluded by saying the award of attorney fees was discretionary with the court, and there was no evidence undue consideration was given to the contingency fee contract in making the award.

K.S.A. 59-1504 provides for the allowance of "just and proper" attorney fees to be recovered as compensation to a person named in a will or codicil who prosecutes any proceedings in good faith

and with just cause for the purpose of having it admitted to probate, whether successful or not, or to any person who successfully opposes the probate of a will. It does not intend that a fee based on a contingent fee contract be dependent on successful litigation, but only that a reasonable allowance for attorney fees be awarded to the person.

K.S.A. 59-1504 has uniform operation and the same considerations should control in the award of attorney fees. An individual, by entering into a contingent fee contract, does not control the award of attorney fees under the statute; the amount awarded as attorney fees is within the discretion of the trial court. The trial court was correct when it determined the type of fee arrangement entered into between Jennings-Irving and their attorneys was irrelevant. Under K.S.A. 59-1504 it would be erroneous for the court to consider the terms and conditions of the employment contract except to establish the person's employment of the attorney to represent him.

Respondent claims that the petitioners failed to sustain their burden of proof and there was not sufficient evidence for the trial court to award attorney fees.

"Burden of proof" means preponderance of the evidence, that is the greater weight of evidence, in view of all facts and circumstances of the case. *Thompson v. Dyson,* 120 Kan. 591, 244 Pac. 867 (1926). The burden of proof on any point is upon the party asserting it, and it is incumbent upon that party to prove the allegations of its petition by a preponderance of the evidence. *In re Estate of Wright,* 170 Kan. 600, 228 P.2d 911 (1951).

To determine the sufficiency of the evidence upon appellate review, this court accepts as true the evidence, and all inferences to be drawn therefrom, which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom. Where findings are attacked for insufficiency of evidence, or as being contrary to the evidence, this court's power begins and ends with determining whether there is evidence to support such findings. Where the findings are so supported, they will not be disturbed on appeal.

The trial court in its memorandum opinion explained how it reached its decision:

"In making it's decision concerning fees, the Court has utilized the exhibits

and testimony presented at the hearing June 22, 1983, along with the docket sheets from the Clerk's Office, the court file, and the Court's own recollections from having been present at all proceedings held in this case.

"Many entries on the timesheets submitted by Jennings-Irving are not specific enough to be attributed item by item to either the 1965 will or the 1976 will. However, most of the legal matters in these two cases flowed in a fairly orderly progression and the Court has been able to associate periods of increased lawyer activity with the filing of pleadings or preparation for hearings. By this method, the Court has been able to attribute blocks of lawyer time to one will or the other."

An expert witness testified as to the value of the services of the attorneys and the difficulty in determining what hours were attributable to which case. The trial judge determined to the best of his ability, based on his participation and knowledge of the case, the work and expenses attributable to the 1965 will and awarded attorney fees.

The trial court should give due consideration to the opinions of the expert witnesses as to the value of legal services, but is not controlled by such evidence, since the court itself is an expert on this subject and may apply its own knowledge and professional experience in determining the value of the legal services rendered.

Under K.S.A. 59-1504, when determining the compensation to be recovered for attorney fees, the trial court considers the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; and the professional character and standing of the attorneys. The trial court's award of attorney fees to Jennings-Irving was proper under the evidence and our mandate.

Affirmed.

McFARLAND, J., dissenting: I believe it was error for the trial court to refuse to admit evidence of the actual contract of employment between Jennings-Irving and their attorney. K.S.A. 59-5104 is, in effect, a reimbursement statute for expenses and attorney fees incurred in promoting a will for admission into probate (or in successfully opposing a will). It is not intended to

create a windfall to anyone, yet such can be the result of the holding of the majority.

Let us look at the following scenario. Prospective client goes to lawyer A for possible representation in securing probate of a will. Lawyer A states his fee would be $50.00 per hour. The same client goes to lawyer B who states his fee is $25.00 per hour. The client then enters into a contract for services with lawyer B. The matter proceeds to trial and the will is not admitted to probate. Let us further suppose on hearing for allowance of a reasonable fee, evidence is introduced attorney fees based upon $50.00 per hour are reasonable, no evidence is admitted on the contract itself, and fees are allowed based upon $50.00 per hour. For simplicity, let us say 100 hours at $50.00 is allowed for a total of $5,000.00. By statute, the client receives the fee. The client only owes $2,500.00 (50%) of the amount to this attorney by contract. The client pays $2,500.00 to the attorney. The attorney sues the client for the $2,500.00 balance of fees awarded by the court. The attorney has already received all attorney fees for which he has contracted. Should the attorney receive twice the fee he contracted for or should the client receive a $2,500.00 windfall from the decedent's estate?

Let us change the facts in the above scenario somewhat. Lawyer A offers to represent the client for $50.00 per hour. Lawyer B says he will take the case on a contingent fee basis— stating that this protects the client from owing any attorney fees if there is no recovery. The client retains lawyer B. The case is lost and attorney fees based upon $50.00 per hour are allowed by the court, without evidence of the contingency fee contract. Again, who gets the windfall-client or attorney?

Let us further assume, in both scenarios, the prospective client would have much preferred lawyer A to represent him but retains lawyer B because his services were contracted for on more favorable terms. Is it just or fair to let lawyer B end up with the same fee lawyer A offered?

The question of who should have the windfall need never be answered if the following rule is adopted. In determining attorney fees under K.S.A. 59-1504, the court should award reasonable attorney fees or attorney fees due under the contract of the parties, *whichever is lower.* This satisfies the intent of the statute. The client is not out of pocket and the attorney has

received the price he bargained for or reasonable fees if he bargained for an excessive fee. If the client and the attorney made a contract at less than the "going rate," the estate rather than the attorney or client should receive the benefit of that bargain.

I would reverse the trial court and remand the case for further proceedings consistent with the views expressed in this dissent.

SCHROEDER, C.J., and HOLMES, J., join the foregoing dissenting opinion.